EBEL, Circuit Judge.
Plaintiff-Appellant Ramon Zamora sued his former employer, Defendantr-Appellee Elite Logistics, Incorporated (“Elite”), under Title VII of the Civil Rights Act, alleging Elite discriminated against Zamora because of his race and national origin 1) by suspending Zamora from work until he presented documentation establishing his right to work in the United States; and 2) then, after reinstating Zamora, firing him after he requested an apology. The district court granted Elite summary judgment on both claims. See Zamora v. Elite Logistics, Inc., 316 F.Supp.2d 1107 (D.Kan.2004). A divided panel of this court reversed that decision. See Zamora v. Elite Logistics, Inc., 449 F.3d 1106 (10th Cir.2006). After rehearing this appeal en banc, this court VACATES the panel’s de-cisión. See 10th Cir. R. 35.6. As to Zamora’s first claim involving Zamora’s suspension, because the en banc court is evenly divided, we simply AFFIRM the district court’s decision granting Elite summary judgment.[1] As to the second claim involving Zamora’s termination, a majority of this court AFFIRMS summary judgment in Elite’s favor.[2]
I. BACKGROUND
Viewing the evidence in the light most favorable to Zamora, see Metzler v. Fed. Home Loan Bank, 464 F.3d 1164, 1166 n. 1 (10th Cir.2006), the evidence in the record established the following: Elite operates a grocery warehouse in Kansas City, Kansas. In June 2000, Elite needed to hire an additional 300 workers in just a few weeks’ time. In doing so, Elite failed to verify that all of its new employees were authorized to work in the United States.
A year later, in August 2001, Elite hired Zamora. At that time, Zamora was a Mexican citizen who had been a permanent legal resident of the United States since 1987. As part of the hiring process and in compliance with the Immigration Reform and Control Act of 1986 (“IRCA”), Zamora showed Elite his social security card, which he had had since 1980 or 1981, and his alien registration card. Zamora also filled out an 1-9 form truthfully indicating that he was a Mexican citizen and a lawful permanent resident of the United States.
Four months after hiring Zamora, in December 2001, Elite received a tip that the Immigration and Naturalization Service (INS)[3] was going to investigate ware *1163 houses in the area. Elite was particularly-concerned about such an investigation in light of its earlier hiring practices in June 2000. Elite, therefore, hired two independent contractors to check the social security numbers of all 650 Elite employees. This investigation indicated that someone other than Zamora had been using the same social security number that he was using.[4] The investigation turned up similar problems with thirty-five other employees’ social security numbers.
On May 10, 2002, therefore, Elite’s human resources manager, Larry Tucker, met specifically with Zamora and gave him an “Important Memorandum,” written in Spanish and English, giving him ten days to produce adequate documentation of his right to work in the United States. Tucker followed this same procedure with the other thirty-five employees whose social security numbers raised concerns.[5] The memorandum Tucker gave Zamora and the other affected workers read:
It is required by federal law that all employees produce documents, which establish their identity and/or employment eligibility to legally work in the United States when they are hired. This eligibility can be established with a U.S. Passport, a Certificate of Citizenship or Naturalization; or with a combination of other documents, such as a state’s driver’s license, state or federal ID card, U.S. Social Security card and/or a certified copy of a birth certificate, issued by a state of the United States.
It has come to our attention that the documents you provided us previously are questionable. Therefore, we are asking that you obtain proper documentation, or you may not be permitted to continue working here. Please bring proper evidence of your identity and employment eligibility no later than 5:00 p.m. on Monday, May 20, 2002, to the Department of Human Resources, or you may be terminated.
Thank you.
At the bottom of this memorandum there was a place where Zamora indicated that
I understand and agree that until and if I provide documents, which establish my identity and/or employment eligibility to legally work in the United States, Elite Logistics may not be able to continue permitting me to work. I also understand and agree that I have until 5:00 p.m. on Monday, May 20, 2002, to produce this documentation.
Zamora signed and dated that section of the memorandum. Zamora testified in his deposition that he understood at that time that he needed to bring in a valid social security card and documents establishing that he had a right to work in the United States. Zamora continued working during this ten-day period.
Zamora did not present Elite with any of the requested documents by May 20, 2002. Therefore, Tucker again met with Zamora[6] and, according to Zamora, Tucker told him that he could not “come to *1164 work anymore until you got a different Social Security number.” Zamora left Tucker’s office and returned that same day with a document from the Social Security Administration showing wage earnings for the years 1978-85 for an “R. Zamora” under Zamora’s social security number.[7] This document had been mailed to an address in Washington, which Zamora had scratched out and replaced with his then-current Missouri address. More problematic, however, was that the date of birth for R. Zamora on this earnings statement was different than the date of birth Ramon Zamora had given Elite at the time Elite hired him. After reviewing the earnings statement, Tucker became concerned that yet a third individual had been using Zamora’s social security number. Therefore, Tucker informed Zamora that this earnings statement was not “acceptable.” Neither was an INS document Zamora showed Tucker that indicated that Zamora had previously applied to become a United States citizen.
At some point, Zamora also showed Tucker his naturalization certificate, indicating that Zamora had in fact become a naturalized citizen of the United States. But Tucker rejected that document as well.
The next day, May 23, Zamora brought Tucker a statement from the Social Security Administration indicating that the social security number Zamora had given Elite was in fact his number. Tucker then told Zamora that “[w]e will check this out ourselves. And if it checks out, you can come back to work.” Tucker’s assistant verified this document’s authenticity and then called Zamora, asking him to return to work on May 29.
On May 29, however, instead of returning to work, Zamora went to Tucker’s office and handed him a letter stating that “[b]efore I could consider going back to work I need from you two things: 1) an apology in writing, and 2) a complete explanation of why I was terminated. Please send a response to my home.” Tucker refused to apologize. Tucker may then have told Zamora to get out of Tucker’s office or the building, or to “[j]ust get the hell out.” According to Zamora, Tucker also told him he was fired.
Zamora sued Elite, alleging the company violated Title VII[8] by first suspending and then firing Zamora because of his race and national origin. See 42 U.S.C. § 2000e-2(a)(l). The district court granted Elite summary judgment on both claims. See Zamora, 316 F.Supp.2d at 1119,1121. Zamora appealed.
II. STANDARD OF REVIEW
This court reviews summary judgment decisions de novo, viewing the evidence in the light most favorable to the non-moving party; in this case, in Zamora’s favor. See Metzler, 464 F.3d at 1166 n. 1. Summary judgment is appropriate only “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed. R.Civ.P. 56(c).
*1165 III. DISCUSSION
In alleging that Elite discriminated against him on the basis of his race and national origin, Zamora challenges two separate incidents: 1) Elite’s suspending Zamora from work until he was able to produce documentation establishing his right to work in the United States; and 2) after Elite reinstated him, Elite’s decision to fire Zamora after he requested an explanation and an apology. See Zamora, 316 F.Supp.2d at 1114.
A. Suspension
The district court granted Elite summary judgment on the suspension claim, after applying McDonnell Douglas’s burden-shifting analysis[9] and concluding that Zamora had established a prima facie discrimination claim, but that Elite had proffered a legitimate, nondiscriminatory reason for suspending Zamora, and Zamora had failed to create a triable issue of fact as to whether or not Elite’s proffered justification was merely a pretext for discrimination. See Zamora, 316 F.Supp.2d at 1116-21. A divided panel of this court reversed that decision, determining that Zamora had presented sufficient evidence to create a triable fact as to whether Elite’s stated reason for requiring Zamora to produce this documentation-that Elite was trying to avoid INS sanctions-was merely a pretext for race and national origin discrimination. See Zamora, 449 F.3d at 1112-13. After rehearing en banc, this court is evenly divided on this issue. For that reason, we simply VACATE the earlier panel opinion and AFFIRM the district court’s decision granting Elite summary judgment on this claim. See Peoples v. CCA Detention Ctrs., 449 F.3d 1097, 1099 (10th Cir.2006) (per curiam), cert. denied, — U.S.—, 127 S.Ct. 664, 687, 166 L.Ed.2d 521 (2006); Zuni Pub. Sch. Dist. No. 89 v. United States Dep’t of Educ., 437 F.3d 1289, 1290 (10th Cir.2006) (per curiam), cert. granted, — U.S.—, 127 S.Ct. 36, 165 L.Ed.2d 1013 (2006).
B. Termination
Zamora also alleged that Elite discriminated against him on the basis of his race and national origin when Elite fired Zamora after he requested an apology. See Zamora, 316 F.Supp.2d at 1114, 1119. The district court granted summary judgment to Elite on this claim, after concluding that Zamora had established a prima facie discrimination claim, but that Elite had proffered a legitimate, nondiscriminatory reason to fire him, and that Zamora had failed to assert sufficient evidence to create a triable issue as to whether or not Elite’s proffered reason was merely a pretext for discrimination. See id. at 1119-21. A majority of the en banc court agrees.
For purposes of his appeal, we assume that Zamora did establish a prima facie discrimination claim. See Annett v. Univ. of Kan., 371 F.3d 1233, 1235, 1237 (10th Cir.2004) (assuming, without deciding, that plaintiff has established prima facie retaliation claim actionable under Title VII); see also McCowan v. All Star Maintenance, Inc., 273 F.3d 917, 923 (10th Cir.2001). Further, Zamora concedes that Elite asserted a legitimate, nondiscriminatory reason for firing Zamora-its human resources manager, Tucker, believed that Zamora would not return to work unless Tucker apologized, and Tucker refused to apologize. Elite’s proffered justification was sufficient for Elite to meet its “exceedingly light” burden under McDonnell Douglas and shift the burden back to Zamora to show that Elite’s proffered justifi *1166 cation was merely a pretext for race and national origin discrimination. Goodwin v. Gen. Motors Corp., 275 F.3d 1005, 1013 (10th Cir.2002). “A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer’s proffered explanation is unworthy of credence.” Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir.2003) (quotation omitted).
Zamora argues that Elite’s proffered reason for terminating Zamora was not worthy of belief because Tucker could not have reasonably believed that Zamora had actually conditioned his return to work on Zamora apologizing. “In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision.” Watts v. City of Norman, 270 F.3d 1288, 1295 (10th Cir.2001) (emphasis added; quotations omitted); see also Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir.2000). And the undisputed evidence in this case establishes that, although Elite informed Zamora he could return to work on May 29, Zamora did not return to work but instead went to Tucker’s office and gave him the letter. And that letter specifically stated that “[bjefore I could consider going back to work I need from you two things: 1) an apology in writing, and 2) a complete explanation of why I was terminated. Please send a response to my home.” (Emphasis added). Further, because Zamora had asked that Tucker’s written apology be sent to his home, Tucker could have reasonably believed that Zamora was not going to return to work on May 29, as Elite had requested. Based upon these undisputed facts known to Tucker, he could reasonably have believed that Zamora was not going to return to work unless Tucker apologized.[10] See Kendrick, 220 F.3d at 1230-32 (holding that, although there was a disputed issue of fact as to whether or not the terminated employee had actually pushed his supervisor, the terminated employee had failed to establish that this proffered reason for his firing was a pretext for discrimination where the decision-maker had no evidence contradicting the report that the employee did push his supervisor); Gearhart v. Sears, Roebuck & Co., 27 F.Supp.2d 1263, 1276-77 (D.Kan.1998) (holding that, even if there was a disputed issue of fact as to whether or not the employee intended to resign, summary judgment for the employer was appropriate where the employer “reasonably believed that employee resigned, and employee failed otherwise to offer sufficient evidence that employer’s asserted reason was pretextual),” aff'd, 194 F.3d 1320 (Table) (10th Cir.1999) (unpublished).
Zamora argues that Tucker’s strong reaction to Zamora’s request for a written apology and explanation indicates that his proffered reason for terminating Zamora was a pretext for his true discriminatory motive. Zamora testified that when he gave Tucker the letter requesting a written explanation and apology, Tucker grabbed it out of Zamora’s hand and told Zamora he was fired “because [Tucker] *1167 was not apologizing to anybody.” But there is simply no evidence in the record indicating that Tucker’s reaction was because Zamora was a Mexican-born Hispanic. In fact, the evidence indicates just the opposite. Once Zamora provided Elite with documentation indicating that he was eligible to work in the United States, and that the social security number he was using was his, Tucker offered Zamora his job back. If Tucker was discriminating against Zamora based upon his race or national origin, Tucker would not have reinstated him. Cf. Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1183 (10th Cir.2006) (holding “where the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer’s stated reason for acting against the employee is not pretextual;” noting, however, that an employee can still “present countervailing evidence of pretext”) (quotation, footnote omitted). There is nothing in the record to suggest that Tucker was not going to permit Zamora to return to work on May 29; in fact, the undisputed evidence indicates that Zamora could have returned to work that day. Under the facts of this case, then, Tucker’s suspending Zamora and his later decision to terminate Zamora’s employment must be viewed as discrete, separate events. Tucker did not terminate Zamora until Zamora requested a written explanation and apology as a condition for his returning to work. And even Zamora concedes that Elite had no legal obligation to apologize. We agree with that. Nor is there any suggestion that Tucker had ever treated similarly situated employees who were not Hispanic or Mexican-born any differently. See generally Kendrick, 220 F.3d at 1230 (noting that one way an employee might prove pretext is to show that the employer treated similarly situated employees differently). Because Zamora failed to present sufficient evidence establishing a genuinely disputed issue of fact as to whether or not Elite’s proffered reason for firing Zamora was a pretext for discrimination, summary judgment for Elite was warranted on this claim.
IY. CONCLUSION
For the foregoing reasons, we VACATE the earlier panel decision, 449 F.3d 1106, and AFFIRM the district court’s decision granting Elite summary judgment on both claims.

. Judges Tacha, Kelly, Hartz, O'Brien, McConnell, Tymkovich and Gorsuch vote to AFFIRM on the suspension claim. Judges Holloway, Ebel, Henry, Briscoe, Lucero, Murphy and Holmes vote to REVERSE.

. Judges Tacha, Ebel, Kelly, Hartz, O'Brien, McConnell, Tymkovich, Gorsuch and Holmes vote to AFFIRM on the termination claim.

. The INS no longer exists. In March 2003, its duties were transferred to the Department of Homeland Security. Yerkovich v. Ashcroft, 381 F.3d 990, 991 n. 2 (10th Cir.2004).

.In January 2002, one of the independent contractors, Datasource, reported to Elite that a Manuel Dominguez, while working in California, had used the same social security number as Zamora. Elite then asked the second independent contractor, Verifications, Inc., to recheck Zamora's social security number. In March 2002, Verifications, Inc. reported to Elite that a Manuel Dominguez had also used the same number to obtain credit.

. Most of these thirty-five employees, when asked for this documentation, just quit. Only Zamora eventually provided paperwork verifying his right to work in the United States.

. Union steward Ray Puentes was at this meeting between Tucker and Zamora and acted as a translator between the two.

. Zamora testified at his deposition that he had had his social security number only since 1980 or 1981. Yet this earnings statement showed wages earned beginning in 1978. At his deposition, Zamora acknowledged that this earnings information was incorrect, but explained that when he had obtained this earning statement a few years earlier, he had then contacted the Social Security Administration to correct this error.

. 42 U.S.C. §§ 2000e to 2000e-17.

. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

. At various places in the record, Zamora asserts that he would, and that he would not, have returned to work even without Tucker’s apology. But Zamora’s subjective intent is not relevant to the question of how the facts objectively appeared to Tucker, as the decisionmaker. See Watts, 270 F.3d at 1295. “The pertinent question in determining pretext is not whether the employer was right ... but whether that belief was genuine or pretex-tual.” Postran v. K-Mart Corp., 210 F.3d 1201, 1206 (10th Cir.2000). The district court actually disregarded Zamora's affidavit, filed after his deposition, indicating Zamora would have continued working even without an apology. See Zamora, 316 F.Supp.2d at 1113 n. 4. This affidavit contradicted Zamora’s earlier deposition testimony that he would not have returned to work without an apology.