FILED
United States Court of Appeals
Tenth Circuit

January 2, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CARL VAN STEEN

      Plaintiff-Appellee/Cross-Appellant,

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

      Defendant-Appellant/Cross-
Appellee.

Nos. 16-1405 & 16-1421

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:15-CV-00137-WYD-MJW)**

Kevin P. Ahearn (Bradley A. Levin with him on the brief) of Levin Sitcoff, PC, Denver, Colorado, for Plaintiff-Appellee/Cross-Appellant.

Jack M. Englert, Jr., of Holland & Hart, LLP, Greenwood Village, Colorado, for Defendant-Appellant/Cross-Appellee.

Before **MATHESON**, **McKAY**, and **McHUGH**, Circuit Judges.

**McKAY**, Circuit Judge.

These cross-appeals arise out of Life Insurance Company of North America's

termination of Carl Van Steen's long-term disability benefits under Lockheed Martin's

ERISA Plan. Life Insurance Company of North America appeals the district court's finding that its decision to terminate Mr. Van Steen's benefits was arbitrary and capricious. Mr. Van Steen, in turn, appeals the district court's denial of his attorney's fees request. We affirm the district court on both issues.

I.

Mr. Van Steen is employed as a Systems Integration Business Analyst at Lockheed Martin Corporation. As such, he is a participant in the Lockheed Martin Group Benefits Plan, which is administered by Life Insurance Company of North America, or LINA. LINA also funds Lockheed's long-term disability policy. ERISA governs the Plan and policy.

In October 2011, Mr. Van Steen was physically assaulted during an altercation while walking his dog. The assault resulted in a mild traumatic brain injury (mTBI) that impacted Mr. Van Steen's cognitive abilities. Following the incident, Mr. Van Steen sought care from his primary treating physician, Dr. David Reinhard, neuropsychologist Dr. James Berry, and a handful of other providers.

The cognitive dysfunction from Mr. Van Steen's mTBI prevented him from returning to work[1] until September 10, 2012, at which point Dr. Reinhard cleared him for part-time work every other day. Mr. Van Steen was allowed to return to part-time work on a daily basis roughly six weeks later. Even on a part-time schedule, however, Mr. Van

---

[1] Mr. Van Steen made an attempt to return to part-time work shortly after his accident, but Dr. Reinhard opted to take him back off work in January 2012 after Mr. Van Steen reported difficulties functioning in his job.

Steen experienced cognitive fatigue and headaches that required him to frequently rest. He often worked from home where it was easier to take naps throughout the day. Due to his inability to stay organized and keep track of deadlines after the assault, Mr. Van Steen received poor feedback on his job performance.

Mr. Van Steen's claim for partial long-term disability benefits was approved on March 30, 2012. Roughly a year later, LINA reviewed Mr. Van Steen's file and contacted Dr. Reinhard's office for more information about Mr. Van Steen's condition and restrictions. Dr. Reinhard's nurse told LINA that Mr. Van Steen's restrictions were basically permanent as he was "not likely to improve." (Appellant's App. at 620.) Despite this prognosis, LINA sent Mr. Van Steen a letter one week later terminating his long-term disability benefits, explaining that "the medical documentation on file does not continue to support the current restrictions and limitations to preclude you from resuming a full-time work schedule." (*Id*. at 813.)

Mr. Van Steen appealed this decision on November 25, 2013, providing a list of his basic job duties and arguing that there was no evidence to support LINA's determination that he is or had been able to perform each and every material duty of his regular occupation full-time. Mr. Van Steen supplemented this appeal with a psychological and vocational evaluation from psychologist David Zierk. LINA denied Mr. Van Steen's appeal on February 27, 2014, asserting that "an explanation of [Mr. Van Steen's] functionality and how [his] functional capacity continuously prevented [him] from performing the material duties of [his] occupation from March 16, 2013 through the present and beyond was not clinically supported." (*Id*. at 800-01.) Mr. Van Steen

3

appealed again on August 8, 2014, with supplemental medical records, only to receive LINA's second denial on October 28, 2014.

Having exhausted his administrative appeals under the Plan, Mr. Van Steen next sought relief before the district court. The district court reversed LINA's decision to terminate Mr. Van Steen's partial long-term disability benefits on the grounds that it was arbitrary and capricious, but denied Mr. Van Steen's request for attorney's fees.

II.

"The district court's determination of whether an ERISA benefits decision is arbitrary and capricious is a legal conclusion subject to de novo review." *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009) (internal quotation marks omitted). The arbitrary and capricious standard applies to review of a plan administrator's benefits decision when "the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Id.* (internal quotation marks omitted). Here, as Lockheed's Plan Administrator, LINA has full discretionary authority to interpret and construe the terms of the ERISA Plan. Thus, the parties agree that we review LINA's underlying termination decision under the arbitrary and capricious standard. Under arbitrary and capricious review, this court upholds LINA's determination so long as it was made on a reasoned basis and supported by substantial evidence. *Id.*

In applying this standard, this court must also consider the possibility that LINA's dual role as "both insurer and administrator of the plan creates an inherent conflict of interest between its discretion in paying claims and its need to stay financially sound,"

4

*id.* at 1358 (internal quotation marks omitted), weighing the conflict "as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The importance of a conflict of interest is "proportionate to the likelihood that the conflict affected the benefits decision." *Graham*, 589 F.3d at 1358. In this case, LINA had a dual role as an insurer and administrator of the Plan and took steps to mitigate any conflict. In any event, we need not and do not rely on conflict of interest considerations to resolve this case.

Lockheed's Plan states that an employee is "Disabled if, because of Injury or Sickness,

1. he or she is unable to perform each and every material duty of his or her regular occupation; and
2. after Monthly Benefits have been payable for 24 months, he or she is unable to perform each and every material duty of any occupation for which he or she may reasonably become qualified based on education, training or experience."

(Appellant's App. at 436.) An employee is "Residually Disabled" under the Plan "if, during the Benefit Waiting Period and while Disability Benefits are payable, he or she is unable to perform each and every material duty of his or her regular occupation on a Full-time basis." (*Id.*) "Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class." (*Id.* at 431.) For Mr. Van Steen's position as a Systems Analyst, full-time work appears to refer to an eight-hour day and a five-day work week. Thus, in order for this Court to uphold LINA's decision to terminate Mr. Van Steen's long-term disability benefits, there must be substantial evidence in the record supporting the determination that Mr. Van Steen is able

5

to perform each and every material duty of a Systems Analyst for eight hours a day. A thorough review of the record reveals no such evidence.

When LINA first approved Mr. Van Steen's claim for long-term disability benefits in the spring of 2012, it noted his "deficits in executive functioning, attention, memory and higher level attention/speed of processing." (*Id*. at 606.) These limitations were especially problematic for a return to work because Mr. Van Steen's "occupation [as a Systems Analyst] requires high executive function." (*Id.*) When LINA asked Dr. Reinhard for an update on Mr. Van Steen's condition a year later, Dr. Reinhard explained that Mr. Van Steen "is limited by cognitive fatigue and is simply unable to tolerate full time work activities yet." (*Id.* at 1260.) Mr. Van Steen's limitations were believed to be permanent, as his condition was unlikely to improve. The record does not reflect significant improvements in Mr. Van Steen's cognitive functioning between his part-time return to work in September 2012 and LINA's internal review of his claim status in March 2013. Despite this, LINA terminated Mr. Van Steen's long-term disability benefits on April 8, 2013.

LINA argues that its April 2013 termination was well-supported because it "based its decision to end the payment of residual LTD benefits to Van Steen on updated medical evidence and the review of that evidence by on-staff Nurse Case Managers, an on-staff physician Board Certified in Occupational Medicine (Dr. Vatt), and an independent Board Certified Clinical Neuropsychologist (Dr. Attfield)." (Appellant's Br. at 28.) Yet, none of these reviewers actually determined from the medical evidence that Mr. Van Steen was capable of performing all of his material job duties on a full-time

6

basis. For example, Dr. Attfield opined that Mr. Van Steen's symptoms were not severe enough "to preclude occupational function," so "a structured, graduated schedule of work reintroduction would appear prudent." (Appellant's App. at 608, 1280-81.) This conclusion is hardly revelatory. Mr. Van Steen was already working part-time as part of Dr. Reinhard's graduated schedule of work reintroduction in which he would be periodically reevaluated to see if he could handle working more hours.

LINA further contends that its denials of Mr. Van Steen's two appeals were also reasonable based on "review of the medical evidence by two more independent Board Certified Clinical Neuropsychologists (Dr. Kolbell and Dr. Fiano) and an independent Board Certified Otolaryngologist (Dr. Grossman)." (Appellant's Br. at 28.) Yet, none of these reviewers remedy LINA's evidentiary deficiency. Dr. Kristin Fiano, an outside neuropsychologist, concluded that Mr. Van Steen's "combination of psychological and cognitive symptoms would not be considered to be at a level that would entirely preclude continuous gainful employment." (Appellant's App. at 560, 564, 932-44.) Mr. Van Steen's part-time work status already made it obvious that his symptoms did not entirely preclude him from engaging in "continuous gainful employment." Like LINA's other evidence, Dr. Fiano's analysis provides no insight into Mr. Van Steen's ability to perform all of his material job duties on a full-time basis.

Dr. Kolbell acknowledged that Mr. Van Steen is "mildly impaired with respect to rapid information processing" and "will require more time to complete complex tasks . . . such as might be encountered in work settings," but did not discuss how these accommodations would impact Mr. Van Steen's ability to perform his material job duties

7

on a full-time basis. (*Id*. at 1034-36.) Dr. Grossman is LINA's only expert to mention an eight-hour work day, but he limited his opinion that Mr. Van Steen could "lift 10-20 pounds occasionally and could sit, stand and move around frequently over an eight-hour day" to "an otolaryngologist perspective." (*Id*. at 792, 928-29.) While this gets closer to the type of evidence that would support LINA's decision, it does not address how Mr. Van Steen's cognitive limitations would impact his job performance over an eight-hour period, nor does it outline his key job responsibilities. *See, e.g.*, *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1285 (10th Cir. 2002) (a well-reasoned benefits decision must consider all essential job duties). None of these reviewers concluded Mr. Van Steen was capable of performing each and every material duty of his regular occupation on a full-time basis.

LINA argues that its medical reviewers did not opine about Mr. Van Steen's ability to perform his material job duties on a full-time basis because giving opinions on disability or occupational status was not within their purview. Yet, none of LINA's vocational experts found that Mr. Van Steen was capable of performing each and every one of his material duties on a full-time basis either. During the first appeal, LINA's reviewing vocational rehabilitation counselor determined that Mr. Van Steen's cognitive restrictions and limitations were "consistent with the required demans [sic] of his occupation of systems analyst [and t]herefore [medical records] do not support functional deficits that preclude [Mr. Van Steen] from [returning to work in] his own occupation." (Appellant's App. at 576.) This evaluation made no distinction between Mr. Van Steen's ability to return to work on a full-time basis rather than a part-time basis.

8

Similarly, during the second appeal, LINA's vocational rehabilitation counselor concluded that "the [restrictions and limitations] of mild impairment in directing/controlling/planning activities of others, having no impairment in dealing with people, and no impairment in making judgements and decisions are consistent with the customers['] own occupation." (*Id*. at 921.) This time, LINA provided a brief list of tasks that Mr. Van Steen was capable of performing, but only in a broad, generalized sense. The LINA reviewers failed to explain the connection between this list and Mr. Van Steen's actual material job duties, or his ability to sustain them for an eight-hour work day. LINA claims that the list of Mr. Van Steen's abilities and restrictions was compared to the demands of his job as a Systems Analyst, but this occupational assessment is not included anywhere in the record, and it is not clear from this description whether the assessment considered the demands of Mr. Van Steen's job on a full-time basis.

Ultimately, LINA's experts—whether medical or vocational—failed to evaluate Mr. Van Steen's ability to perform his material job duties on full-time basis. LINA tries to dismiss this shortfall as "semantics," claiming that, in concluding that Mr. Van Steen was capable of working in his occupation, its experts were impliedly referring to full-time work. (Appellant's Response and Reply Br. at 29-32.) The plain language of the Plan cannot be dismissed so easily. The Plan's residual disability clause requires a determination as to whether a claimant is able to perform each and every material duty of his job on a full-time basis. Here, where Mr. Van Steen is already working part-time, clear support and analysis are required to show that his restrictions and limitations do not

9

prevent him from performing his material job duties full-time. This distinction is especially relevant for Mr. Van Steen's case, as the record contains extensive descriptions of his cognitive fatigue, even on a part-time schedule. LINA would have us believe that Mr. Van Steen has the cognitive stamina to sustain an eight-hour work day for five days a week, yet offers no evidence to support that conclusion.

The physicians and experts who did analyze the distinction between a part-time and full-time work schedule all concluded that Mr. Van Steen is not capable of working an eight-hour day with his current limitations. Doctors Reinhard and Berry both wrote letters to LINA in October 2013 opining that Mr. Van Steen could not manage a full-time return to work and should have his benefits reinstated. Similarly, Dr. Zierk—a psychologist who conducted a psychological and vocational evaluation of Mr. Van Steen as part of the first appeal—concluded that "[b]ased on Mr. Van Steen's diminished cognitive functioning, it is recognized he is no longer capable of performing the higher order cognitive functions associated with his customary occupation on a full-time, uninterrupted basis and without the provision of considerable accommodations." (Appellant's App. at 1056.)

LINA has discretion in interpreting and administering the Plan, but this discretion does not stretch so far as to ignore the language of the Plan itself. In order to be "well-reasoned," LINA's decision to terminate benefits must be based on medical evidence that Mr. Van Steen is capable of performing each and every material duty of his occupation as a Systems Analyst on a full-time basis. LINA has provided no such evidence. For this

10

reason, we echo the district court in concluding that LINA's decision was "unsupported by substantial evidence," and is, therefore, arbitrary and capricious. (*Id*. at 233-35.)

III.

This court reviews a district court's fee decision in an ERISA matter for an abuse of discretion. *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 108 (10th Cir. 1983). Pursuant to 29 U.S.C. § 1132(g)(1), the "court in its discretion may allow a reasonable attorney's fee and costs of action to either party" in an ERISA matter. Courts generally analyze five factors or guidelines in determining if an award is appropriate under 29 U.S.C. § 1132(g)(1):

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing parties to personally satisfy an award of attorney's fees;
> (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances;
> (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and
> (5) the relative merits of the parties' positions.

*Gordon*, 724 F.2d at 109. Courts need not consider each factor, but no single factor should be held dispositive. *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 n.17 (10th Cir. 1992).

The district court denied Mr. Van Steen's request for attorney's fees, finding that (1) there was no compelling evidence LINA had acted culpably or in bad faith; (2) LINA did have the ability to pay the fee; (3) an award would not deter others in similar circumstances; (4) Mr. Van Steen's claim did not seek to benefit all Plan participants or resolve a significant legal question; (5) LINA's arguments were not wholly without

11

merit.  Mr. Van Steen appeals this decision, arguing that the district court erred in its analysis of the *Gordon* factors.

"Under the abuse of discretion standard[,] a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (*quoting McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).  While the district court could well have weighed the *Gordon* factors differently, Mr. Van Steen's arguments fail to convince us that the district court's decision was based on a clear error of judgment or exceeded the bounds of permissible choice.  Rather, our review of the record persuades us that the district court did not abuse its discretion in applying the *Gordon* factors to this case.

## IV.

We **AFFIRM** the district court's decision to reverse LINA's denial of Mr. Van Steen's long-term disability benefits. We further **AFFIRM** the district court's denial of Mr. Van Steen's attorney's fees request.