**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WILLIAM MANNA,

     Plaintiff - Appellant,

v.

PHILLIPS 66 COMPANY, a foreign
company; PHILLIPS 66 SEVERANCE
PAY PLAN,

     Defendants - Appellees.

No. 19-5064
(D.C. No. 4:16-CV-00500-TCK-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Plaintiff William Manna sued defendants Phillips 66 Company (Phillips 66)

and Phillips 66 Severance Pay Plan (the Plan), alleging they violated the Employee

Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. §§ 1001–1461, the

Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. §§ 12101–12213, and

Oklahoma drug-testing law when they terminated him and denied him severance

benefits. The district court granted summary judgment for Phillips 66 and the Plan.

For the reasons discussed below, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

**Background**

Manna worked for Phillips 66 and its predecessors for about 18 years, most recently in Bartlesville, Oklahoma. He was a salaried employee who could and sometimes did work remotely. In September 2014, Rebecca Ginyovszky, who was based in Houston, Texas, became Manna's supervisor. Ginyovszky rated Manna's overall performance in 2014 as "below expectations" for, among other reasons, failure to complete several projects on time. App. vol. 15, 972. In May 2015, Ginyovszky disciplined Manna with a written warning for "routine late arrival to the office." App. vol. 10, 654. The warning directed Manna to "arriv[e] at the office no later than 9:00 a.m." and to advise Ginyovszky when he "would not be in the office or not able to make the designated timeframe." App. vol. 10, 654. Although Manna testified that he complied with the warning, Ginyovszky testified that she continued to receive reports from coworkers that he was arriving late.

On July 14, 2015, Manna traveled to Houston for, among other reasons, his midyear review with Ginyovszky. When he was not at the office by 9:30 a.m. the following morning, Ginyovszky emailed to ask him where he was; Manna replied that he was working in his hotel room and would come to the office later. When he arrived in the office around noon or 1:00 p.m., Ginyovszky and others observed him slurring his speech and having difficulty standing.

In response, Ginyovszky authorized immediate drug and alcohol testing in Houston, where a Phillips 66 doctor also observed the symptoms. Manna denied these symptoms and said he was "his normal self without effect." App. vol. 14, 855.

2

Regardless, Phillips 66 placed him on short-term disability leave until he could complete further health evaluations. The results of the drug test in Houston and of subsequent tests all later came back negative. His personal doctor then cleared Manna to return to work, and Ginyovszky said she was no longer concerned that he had a substance-abuse or mental-health issue. When he returned from his short-term disability leave about two weeks after the Houston trip, a human-resources employee spoke to Manna and encouraged him to divulge any health or other issues he was having. At all times, Manna denied that he ever had an impairment or disability. Phillips 66 terminated his employment on August 6, 2015, citing his failure to improve his performance in the areas outlined in the May 2015 warning.

Manna subsequently applied for benefits under the Plan. The Plan is an ERISA welfare plan whose purpose is, among other things, "to provide severance benefits for [Phillips 66 employees] who are involuntarily laid off in circumstances defined by the Plan." App. vol. 2, 77. The Plan appoints both a plan administrator to make benefit determinations and a benefits committee to review those decisions if the claimant appeals. Both the plan administrator and the members of the benefits committee are Phillips 66 officers or employees. Here, the plan administrator denied Manna's claim, and the benefits committee affirmed that decision.

Manna sued. As relevant to this appeal, he alleged that Phillips 66 and the Plan violated ERISA, the ADA, and Oklahoma state law. The district court granted Phillips 66 summary judgment on the ADA and state-law claims, but it remanded the ERISA claims to the Plan. The Plan again rejected Manna's claim for benefits; the

3

district court then granted summary judgment to the Plan on the ERISA claims. Manna appeals both orders.[1]

## Analysis

Manna appeals from the district court's orders granting summary judgment to the Plan on his claims for (1) severance benefits under ERISA and (2) attorney's fees under ERISA. He also appeals the district court's decision granting summary judgment to Phillips 66 on his claims that Phillips 66 (3) discriminated against him in violation of the ADA and (4) violated Oklahoma drug-testing law. We address each argument in turn.

## I.      Severance Benefits Under ERISA

Under the Plan's terms, a Phillips 66 employee "is eligible to receive benefits under th[e] Plan if he has all Qualifying Circumstances and does not have a Disqualifying Circumstance." *Id.* at 83–84. "Qualifying Circumstances" occur when an employee with at least a year of service "has a Layoff" on or after May 2012. *Id.* at 84. An employee "has a Layoff" if, as relevant here, Phillips 66 gave the employee a written Notice of Layoff. A "Disqualifying Circumstance" includes, among other things, when the employee "is terminated for cause, as indicated by the fact that his or her termination is recorded in [Phillips 66's] personnel system as a 'discharge' or

---

[1] Even though Manna filed a notice of appeal that named only the district court's final judgment, that notice is jurisdictionally sufficient to support review of both of the orders he seeks to appeal. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002).

4

similar classification." *Id.* And the Plan can consider an employee terminated for cause even if the employee also received a Notice of Layoff.

Following Manna's termination, the plan administrator rejected his application for benefits. Specifically, it concluded that Phillips 66 terminated him for cause because documents in his employment file showed that Phillips 66 terminated him for failing to improve on issues he had with communication, attendance, and delivering on goals and projects. Further, he did not otherwise meet the requirements for a layoff. Manna then filed an administrative appeal to the benefits committee. The benefits committee denied his appeal for the same reasons the plan administrator denied his application, and it further added that Manna could not be considered laid off because he had not received a Notice of Layoff as required by the Plan. Manna then sued in federal court. *See* 29 U.S.C. § 1132(a)(1)(B).

Initially, the district court found the Plan's determination—as reflected by both the plan administrator's and benefit committee's written decisions—arbitrary and capricious. Specifically, the district court found that the Plan's decision lacked evidentiary support for Manna's alleged performance and attendance failures, and it found that the Plan ignored contrary evidence. Further, the district court faulted the Plan for requiring a Notice of Layoff when its reasoning was based on Manna being terminated for cause. And it determined that the Plan's reliance on such "formal designations and actions entirely within the employer's control" were not entitled to deference. App. vol. 17, 1087. Accordingly, the district court remanded to the Plan for further proceedings.

5

On remand, the Plan, acting through its benefits committee, again denied Manna's request for benefits. This time, the Plan disavowed any reliance on its own prior factual determinations and instead focused on the written terms of the Plan itself. The Plan explained that it could only award benefits if Phillips 66 provided Manna a Notice of Layoff and if Manna had no Disqualifying Circumstances. And Phillips 66 did not issue Manna a Notice of Layoff. Further, a termination-for-cause notation in Manna's employment file was a Disqualifying Circumstance. Thus, "under the express terms of the Plan," Manna was ineligible for benefits. App. vol. 6, 378. Manna again appealed that determination to the district court. This time, the district court upheld the Plan's determination, and it agreed that the determination was supported by "the express terms of the Plan." App. vol. 18, 1182.

In the appeal now before us, Manna argues that (1) the district court erred in its second order by applying the wrong standard of review to its consideration of the Plan's decision; (2) the Plan wrongly denied his claim; and (3) the district court wrongly upheld the Plan's decision.

In its second decision reviewing the Plan's benefits denial, the district court used an arbitrary-and-capricious standard of review because the Plan relied only on the Plan's written terms when making its benefits decision. On appeal, Manna argues that the district court should have afforded no deference to the Plan's determinations because the Plan had a conflict of interest with Phillips 66. Because the district court based its decision only on the Plan's written terms as opposed to disputed facts, we review de novo the district court's selection of the arbitrary-and-capricious standard

6

to review the Plan's decision to deny Manna benefits. *Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 675 (10th Cir. 2019) (noting de novo review is appropriate where district court's order did not resolve disputed facts).

Nevertheless, Manna argues that the district court should have given less deference to the Plan than typically afforded on arbitrary-and-capricious review because the Plan had a conflict of interest. Specifically, Manna contends, Phillips 66 "funds the Plan, appoints and compensates the Plan Administrator[,] and has access to the value of the benefit claim." Aplt. Br. 33. But although a conflict of interest could be relevant, "[t]he importance . . . attach[ed] to the existence of a conflict of interest is proportionate to the likelihood that the conflict affected the benefits decision." *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir. 2009). And Manna makes no attempt to explain how this apparent conflict could have "affected the benefits decision." *Id.* Thus, Manna's conflict-of-interest argument has no bearing on whether the district court selected the correct standard of review. And, as here, when a plan administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the district court should apply a deferential standard of review to the Plan's decision to determine "only whether the denial of benefits was arbitrary and capricious." *Martinez v. Plumbers & Pipefitters Nat'l Pension Plan*, 795 F.3d 1211, 1214 (10th Cir. 2015) (first quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); second quoting *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008)).

7

Because the district court did apply the arbitrary-and-capricious standard, we reject Manna' argument that the district court applied an incorrect standard.

Manna argues that we, too, should give some lesser level of deference to the Plan than typically afforded on arbitrary-and-capricious review. In support, he invokes the same conflict-of-interest argument. But as explained above, Manna did not explain how any conflicts could have affected the benefits decision. Accordingly, we decline Manna's request to afford no deference to the Plan's determination.

Instead, like the district court, we review the Plan's determination under the arbitrary-and-capricious standard. *See id.* In applying this standard, we will uphold the Plan's decision "so long as it was made on a reasoned basis and supported by substantial evidence." *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision[]maker. Substantial evidence requires more than a scintilla but less than a preponderance." *Graham*, 589 F.3d at 1358 (quoting *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir.1992)).

Manna argues that the Plan did not give "a full[-]and[-]fair review" to his claim as required by ERISA because the Plan selectively relied on only certain evidence. Aplt. Br. 35 (quoting 29 U.S.C. § 1133(2)). Under ERISA, the Plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full[-]and[-]fair review . . . of the decision denying the claim." § 1133(2). And regulations implementing that statutory requirement further explain

8

that such a review must "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(iv).

But Manna directs this argument only at the initial benefits determination—the determination that the district court rejected. And on remand from the district court's initial order, the Plan disclaimed any reliance on its initial determination and instead based its denial of benefits solely on (1) Manna's lack of Notice of Layoff and (2) the termination-for-cause notation. The district court upheld this second determination, which relied only on the Plan's terms. Even if the Plan's initial determination was not based on a full-and-fair review, Manna does not explain how that error impacted the district court's review of the Plan's second determination.[2]

Moreover, to the extent that Manna argues that the Plan's second determination erroneously considered only limited evidence, the cases he cites do not support his position. Those cases explain or suggest that a plan need only review evidence that is relevant to the application of particular plan terms. *See Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 341, 343–44 (6th Cir. 2011) (explaining that plan terms precluding benefits to claimant discharged for "insubordination" permitted plan both to review transcript of hearing held about circumstances of claimant's discharge and to decline to review medical records that

---

[2] Nor does Manna suggest that the Plan's disclaimer on remand of its prior rationale is itself evidence that the Plan did not make its subsequent decision on a "reasoned basis." *Van Steen*, 878 F.3d at 997. We thus express no opinion on the merits of such an argument.

9

were irrelevant to that question); *Al-Abbas v. Metro. Life Ins. Co.*, 52 F. Supp. 3d 288, 290, 294, 296–97 (D. Mass. 2014) (considering various medical records plan consulted to determine whether claimant unable to perform job duties because of "sickness or injury"). Here, the Plan's terms required the Plan to determine only whether Manna received a Notice of Layoff and whether his personnel filed contained a termination-for-cause notation. The Plan was not required to consider any other evidence to make that determination. *See Farhner*, 645 F.3d at 343-44. Thus, the Plan based its second determination on a full-and-fair review. [3]

Finally, Manna criticizes the district court for "accept[ing] the Plan's duplicative conclusions for benefit denial on remand." Aplt. Br. 42. It is true that the Plan's ultimate decision to deny benefits mirrored its initial decision on remand. But its rationale on remand differed in that it was based only on "the express terms of the Plan." App. vol. 6, 378. Moreover, the district court did not preclude the Plan from ultimately arriving at the same conclusion; in fact, it expressly stated that it "has not directed the Plan to find that [Manna] is entitled to severance pay." App. vol. 17, 1089 n.1. To the extent that Manna argues that the district court's order approving the Plan's second determination did not address the concerns outlined in the district court's remand order, we decline Manna's invitation to second guess the district court's understanding of its own instructions. *See United States v. Little*, 60 F.3d 708,

---

[3] Manna also argues that it was arbitrary and capricious of the Plan not to give him a Notice of Layoff because the Plan was "required" to do so. Aplt. Rep. 8. But he points to nothing in the Plan that obligated the Plan to give him a Notice of Layoff.

712 n.2 (10th Cir. 1995) (explaining that "[t]he district court surely knows more about the meaning of its own orders than we do" (quoting *G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 831 (10th Cir. 1990))). And in any event, Manna does not explain how this purported error in the district court's order impacts our review of the Plan's determination.

Accordingly, we agree with the district court that the Plan's decision denying Manna benefits was not arbitrary and capricious because Manna did not meet the requirements outlined in the Plan's written terms. In other words, the Plan's decision "was made on a reasoned basis," *Van Steen.*, 878 F.3d at 997, and supported by "more than a scintilla" of adequate evidence. *Graham*, 589 F.3d 1358.

## II.   ERISA Attorney's Fees

Manna next argues that the district court wrongly rejected his claim for attorney's fees under ERISA. We "review[] a district court's fee decision in an ERISA matter for an abuse of discretion." *Van Steen*, 878 F.3d at 1000. Under that standard, we will uphold the district court's determination unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)). In an ERISA action, a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "A fee claimant need not be a prevailing party to be eligible for an award of attorney's fees and costs under ERISA." *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013). Instead, a district court may award

11

attorney's fees "as long as the fee claimant has achieved 'some degree of success on the merits.'" *Id.* (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010)). To decide whether a fee claimant achieved that success, a district court "may consider" five different factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.*

Manna argues that the district court abused its discretion because it rejected his application based on his status as the nonprevailing party instead of considering the factors listed in *Cardoza* and because the district court's initial remand order constituted "some degree of success on the merits." *Id.* (quoting *Hardt*, 560 U.S. at 245). True, the district court denied Manna's motion for attorney's fees because it determined that Manna was not the prevailing party. But instead of explaining why he achieved some success, Manna points out only that the Supreme Court has declined to decide whether a remand order, standing alone, is enough to award attorney's fees. *See Hardt*, 560 U.S. at 256. And to be entitled to attorney's fees, Manna must demonstrate that he "has achieved 'some degree of success on the merits.'" *Cardoza*, 708 F.3d at 1207 (quoting *Hardt*, 560 U.S. at 245). Here, Manna gives us no reason to determine that the district court's remand order represented any success on the merits. And none of the cases he cites involve a court awarding fees

12

simply because of a decision to remand to the plan. Instead, in all those cases there were other factors beyond a remand order that supported awarding fees. *See Hardt*, 560 U.S. at 256 (noting plan changed benefits determination on remand); *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 546 (6th Cir. 2011) (unpublished) (affirming fee award where, among other factors, plan acted in bad faith and award would have "deterrent effect"); *Hollingshead v. Stanley Works Long Term Disability Plan*, No. 10-CV-03124-WJM-CBS, 2012 WL 6151994, at *2 (D. Colo. Dec. 11, 2012) (finding fee award would encourage plan to pay benefits "without the need for extensive and costly litigation"); *James F. ex rel. C.F. v. CIGNA Behavioral Health, Inc.*, No. 1:09-CV-70-DAK, 2011 WL 2441900, at *2 (D. Utah June 15, 2011) (finding that plan "acted culpably" and fee award would have deterrent effect). Here, by contrast, Manna fails to explain how any of the other *Cardoza* factors would support a fee award. *Cardoza*, 708 F.3d at 1207.

Accordingly, on these facts we cannot say that a remand order alone constitutes some success on the merits. And because Manna makes no effort to explain why it might, we are not left with "a definite and firm conviction" that the district could should have awarded fees based on a remand order alone. *Van Steen*, 878 F.3d at 1000 (quoting *Moothart*, 21 F.3d at 1504).

## III. ADA "Regarded As" Disabled

Manna next argues that the district court erred by granting Phillips 66 summary judgment on Manna's claim that Phillips 66 terminated him because it regarded him as disabled. We review de novo a district court's decision granting

13

summary judgment, applying the same summary-judgment standard as the district court. *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011). Under that standard, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non[]moving party, is such that a reasonable jury could return a verdict for the non[]moving party.'" *Carter*, 662 F.3d at 1141 (quoting *Zwygart v. Bd. of Cty. Comm'rs*, 483 F.3d 1086, 1090 (10th Cir. 2007)).

ADA disability discrimination claims that rely only on circumstantial evidence, such as Manna's, are generally subject to the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). Under that framework, Manna must first make a prima facie showing of disability discrimination by demonstrating "that, at the time he was fired, (1) he was a disabled person as defined by the ADA; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he was fired because of his disability." *Carter*, 662 F.3d at 1142. Manna must make this demonstration by a preponderance of the evidence. *Smothers*, 740 F.3d at 539 (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1197 (10th Cir. 2000)). If Manna makes that prima facie showing, the burden then shifts to Phillips 66 to offer a legitimate, nondiscriminatory reason for its decision to discharge him.

14

*Id.* If Phillips 66 does so, the burden then returns to Manna to show that Phillips 66's stated reason for firing him was pretextual. *Id.*

To demonstrate that "he was a disabled person as defined by the ADA," Manna does not argue that he actually suffered from a disability. *Carter*, 662 F.3d at 1142. Instead, he argues that Phillips 66 regarded him as having an alcohol or other substance-abuse-related disability. The ADA defines "disabled person" as, among other things, "being regarded as having . . . an impairment." 42 U.S.C. § 12102(1)(C). And the ADA considers a person to be regarded as having an impairment if the person "has been subjected to an action . . . because of . . . [a] perceived physical or mental impairment." § 12102(3)(A). In other words, others must have perceived the person as having an impairment and the person must have "been subjected to an action . . . because of" that perceived impairment. *Id.* But a perceived impairment does not meet this definition if it is "transitory and minor," that is, if others perceive the person of having "an impairment with an actual or expected duration of [six] months or less." § 12102(3)(B).

Combining these standards with the facts of this case, Manna must first demonstrate that he meets the regarded-as-disabled definition of disabled person under the ADA by showing that (1) Phillips 66 perceived him as having an impairment, (2) the impairment had a duration of more than six months, (3) Phillips 66 perceived the impairment when it terminated him, and (4) Phillips 66 terminated him because of his perceived impairment. *See* § 12102(3)(A); *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016). Once he has demonstrated that "he

15

was a disabled person as defined by the ADA," Manna must then also show that "he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and . . . he was fired because of his disability." *Carter*, 662 F.3d at 1142.[4] After he has met this burden, the burden then shifts to Phillips 66 to offer a legitimate, nondiscriminatory reason for its decision to discharge him. *Smothers*, 740 F.3d at 539. If Phillips 66 does so, the burden then returns to Manna to show that Phillips 66's stated reason for firing him is pretextual. *Id.*

The district court found, as relevant here, that Manna demonstrated that Phillips 66 "considered" him to be impaired. App. vol. 17, 1076. Specifically, the district court noted that several Phillips 66 employees believed he was under the influence of drugs or alcohol or that he suffered from some other physical or mental health issue on the day he underwent drug testing in Houston, and it concluded that Phillips 66 therefore perceived Manna to be impaired. The district court never made explicit findings regarding either the duration of the perceived impairment or whether Phillips 66 terminated Manna because it perceived him as impaired as required by the regarded-as-disabled definition. Nevertheless, it then proceeded to conclude that he "fail[ed] to address the causation element" of the prima facie demonstration of disability discrimination. App. vol. 17, 1077; *see Carter*, 662 F.3d at 1142. Finally,

---

[4] As shown, this framework requires two showings of causation. First, in order to show that he was disabled under the regarded-as definition of disabled, Manna must show that Phillips 66 terminated him because it perceived him to be impaired. *See* § 12102(1)(C), (3)(A). Second, in order to make his prima facie demonstration of disability discrimination, Manna must show that Phillips 66 terminated him because of a disability. *See Carter*, 662 F.3d at 1142

16

the district court concluded that even if Manna had met his prima facie burden, he "cited no evidence at all that Phillips[ 66's] proffered reason was pretextual" and thus did not carry his ultimate burden to show an inference of pretext.

Manna challenges these conclusions on appeal by arguing for the first time that once he demonstrated that he met the regarded-as-disabled definition, he "need not make separate showings of causation and pretext." Aplt. Br. 48. In support of his argument, Manna cites *Lewis v. City of Union City*, 934 F.3d 1169 (11th Cir. 2019). In *Lewis,* the Eleventh Circuit explained that the *McDonnell Douglas* causation analysis is "built in" to the regarded-as analysis because the definition of "regarded as" includes a requirement that an employer took some prohibited action because it regarded its employee as impaired. 934 F.3d at 1184 (second quoting § 12102(3)(A)); *compare* § 12102(3)(A) (defining "disabled person" as, among other things, person who "has been subjected to an action . . . *because of* . . . [a] perceived physical or mental impairment" (emphasis added)), *with Carter*, 662 F.3d at 1142 (explaining that the prima facie demonstration of disability discrimination requires showing person "was fired *because of* his disability" (emphasis added)). Thus, according to the Eleventh Circuit, the same evidence that demonstrates causation under § 12102(3)(A) also demonstrates causation under the *McDonnell Douglas* prima facie demonstration of disability discrimination. *See Lewis*, 934 F.3d at 1184; *cf. Carter*, 662 F.3d at 1142. Relying on *Lewis*, Manna argues that a showing of causation "need only be made once" and that he made this showing by demonstrating that Phillips 66

regarded him as impaired. Aplt. Br. 49 (quoting 29 C.F.R. pt. 1630, app., § 1630.2(*l*)).

But Manna forfeited this argument below by not presenting it to the district court and waived it on appeal by not arguing for plain-error review. *See McKissick v. Yuen*, 618 F.3d 1177, 1189–90 (10th Cir. 2010). And even if we were to accept Manna's argument that he need only demonstrate causation once, he has failed to make that demonstration at all. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 675 (10th Cir. 1998) (exercising discretion to reject waived argument on merits). As we have noted, the district court did not explicitly address the causation requirement in the regarded-as-disabled definition. But the district court did specifically conclude that Manna failed to address or even acknowledge the causation requirement for disability discrimination. Although Manna now argues that he did make a causation argument as to disability discrimination before the district court, our review of his briefing below reveals no such argument. Accordingly, even if we accept Manna's argument that a showing of causation "need only be made once," he must still make that showing at least once. Aplt. Br. 49 (quoting 29 C.F.R. pt. 1630, app., § 1630.2(*l*)). And he fails to do so.

Moreover, assuming Manna did make a prima facie demonstration of disability discrimination under the *McDonnell Douglas* framework, he must nevertheless show that Phillips 66's stated reason for terminating him was pretextual. Even *Lewis*, contrary to Manna's argument, proceeded to analyze whether the employer terminated the employee for pretextual reasons. 934 F. 3d at 1185–86. Here, when

the burden shifted to Phillips 66 to justify its decision to terminate Manna, Phillips 66 offered a legitimate, nondiscriminatory reason for terminating Manna—his attendance issues. Specifically, Phillips 66 warned Manna in May 2015 to report to work no later than 9:00 a.m. or he risked termination, but he continued to come to work late. Thus, Phillips 66 met its burden.

Because Phillips 66 provided a legitimate, nondiscriminatory reason for terminating Manna, the burden shifts back to Manna to show that this reason is pretextual. *See Smothers*, 740 F.3d at 539. And to demonstrate pretext, Manna must "show[] either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Id.* (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007)). This showing can include, for instance, evidence that other employees were not treated similarly for the same conduct or evidence of "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's stated reason for terminating the employee." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017) (quoting *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014)).

In arguing that he meets this burden, Manna insists that he never had an attendance problem and that he complied with the May 2015 warning. But the portions of the record he points to undermine, rather than support, his argument that he did not have an attendance problem. For example, he cites deposition testimony of a coworker who testified that Manna's absence caused work delays. He also cites testimony from his supervisor, Ginyovszky, who testified that she received feedback

19

from other employees that Manna was not "available and present." App. vol. 14, 909. Rather than confronting this testimony, Manna suggests that even if he had attendance issues, they did not impact his work; for example, Manna asserts that the coworker could not identify a specific project that was late because of his poor attendance. But as the district court explained, evidence that "his performance was not poor enough to warrant termination" does not show that Phillips 66's decision was pretextual. App. vol. 17, 1077. Thus, Manna has not shown that "a discriminatory reason more likely motivated" Phillips 66 or that its stated reason for terminating him is "unworthy of credence." *Smothers*, 740 F.3d at 539 (quoting *Zamora*, 478 F.3d at 1166 (10th Cir. 2007)).

Accordingly, the district court did not err by granting summary judgment to Phillips 66 on Manna's claim for disability discrimination.

## IV.    Oklahoma State Law

Finally, Manna argues that the district court improperly rejected his claim under Oklahoma's Standards for Workplace Drug and Alcohol Testing Act (the Testing Act), Okla. Stat. tit. 40, §§ 551–63. The Testing Act provides certain requirements for Oklahoma employers who choose to test their employees or job applicants for drugs or alcohol. *See id.* at §§ 553(B), 554. The Act permits employers to terminate employees who refuse to be tested or who test positive for drugs or alcohol. *Id.* at § 562(B). An employee may bring a civil suit for lost wages if an employer "had a specific intent to violate the [A]ct." *Id.* § 563(A). Manna argues that the Act prohibits an employer from terminating an employee who undergoes

20

workplace drug or alcohol testing and receives only negative test results. And he alleges that Phillips 66 violated the Testing Act by terminating him after he tested negative. But the district court rejected this argument because the Testing Act "does not expressly prohibit an employer from terminating an employee it suspects of using illegal drugs or alcohol after the individual tests negative." App. vol. 17, 1078. We review de novo the district court's interpretation of state law. *Hansen v. SkyWest Airlines*, 844 F.3d 914, 922 (10th Cir. 2016).

On appeal, Manna acknowledges that the Testing Act does not expressly prohibit an employer from terminating an employee who tests negative for drugs or alcohol. He instead argues that because the Act expressly states that employers *may* terminate employees who test positive or refuse to be tested, it therefore implies that employers *may not* terminate employees who, like him, test negative. But as the district court explained, employers in Oklahoma may generally terminate employees for any reason that does not otherwise violate the law. *See Burk v. K-Mart Co.*, 770 P.2d 24, 26 (Okla. 1989). And Manna points to no part of the Testing Act that overrides that general rule. Further, Manna cites no authority that supports his interpretation of the Act. He relies only on *Jones v. State ex rel. Office of Juvenile Affairs*, 268 P.3d 72 (Okla. 2011). But *Jones* addressed whether the Testing Act required a state employee to exhaust state administrative remedies before she sued; it says nothing about whether an employer can terminate an employee who tests negative for drugs or alcohol. *Id.* at 75, 79. Thus, we reject Manna's argument and affirm the district court.

21

**Conclusion**

The district court applied the correct standard of review to Manna's ERISA claim, and on appeal we agree that the Plan's decision denying him severance benefits was not arbitrary and capricious. And because Manna did not explain how a remand to the Plan alone constituted some success, the district court did not abuse its discretion in denying his request for ERISA attorney's fees. Next, regarding Manna's ADA claim, even if Manna had not waived the causation argument, he failed to demonstrate that he met the regarded-as definition of disabled. Further, because Manna failed to carry his burden to show causation or pretext, the district court correctly found that he had not made a prima facie demonstration of disability discrimination or that Phillips 66's stated reason for terminating him was pretextual. Finally, the district court correctly found that Manna did not state a claim for relief under Oklahoma state law. Thus, we affirm the district court's orders granting summary judgment to Phillips 66 and the Plan.

Entered for the Court


Nancy L. Moritz
Circuit Judge