**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN DARDICK,

     Plaintiff - Appellant,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, a Maine corporation;
FIRST UNUM LIFE INSURANCE
COMPANY, a New York corporation,

     Defendants - Appellees.

No. 17-1412
(D.C. No. 1:16-CV-02838-LTB-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

John Dardick brought this action under the Employee Retirement Income
Security Act (ERISA) after being denied long-term disability benefits by Unum Life
Insurance Company of America and First Unum Life Insurance Company (Unum).
He claimed benefits under a group disability benefits plan provided by his former

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

employer, Westcon Group, Inc. (Westcon). The district court entered judgment for Unum, and Mr. Dardick appeals. We affirm.

## I.    BACKGROUND

Mr. Dardick worked for Westcon as a Vice President of Cloud Services until August 21, 2015, when he stopped working due to chronic coronary artery disease and related conditions. He applied for disability benefits in early August 2015. Unum approved short-term benefits through December 23, 2015, after considering Mr. Dardick's coronary artery disease and the recovery periods required for two surgeries he underwent in late 2015.

Mr. Dardick applied for long-term disability benefits based on the opinions of Dr. Bradley Fanestil, an internist, and Dr. Nelson Trujillo, a cardiologist, who stated that he could not perform his job due to his chronic coronary artery disease, angina, stress, depression, and anxiety. Unum denied long-term benefits on January 12, 2016, concluding that the medical records did not support restrictions that would prevent Mr. Dardick from performing his regular sedentary occupation.

Mr. Dardick filed an administrative appeal on April 22, 2016, and provided a report from Dr. Fanestil. Dr. Fanestil stated that Mr. Dardick should not return to work, noting that the stress of work was contributing to his cardiovascular problems. Dr. Fanestil also started Mr. Dardick on a trial of bupropion to treat depression, but he was unable to tolerate the bupropion, so he stopped taking it after a couple of weeks. Unum had Susan Grover, a nurse clinical consultant, review the file. She found no support for a finding of disability. In addition, Unum sought advice on

2

Mr. Dardick's job requirements from Richard Byard, a vocational consultant. Mr. Byard modified the initial classification of Mr. Dardick's position as Systems Project Manager to Cloud Solution Manager, and determined that it required sedentary activity. He recognized that Mr. Dardick claimed his particular occupation required extensive travel, but as normally performed, the position did not require extensive travel. Based on Ms. Grover's and Mr. Byard's reports, Unum denied benefits.

Mr. Dardick filed a further administrative appeal. He included reports from Drs. Fanestil and Trujillo, both of whom opined that Mr. Dardick was unable to return to his previous occupation. Unum had the additional evidence reviewed by Mr. Byard and Ms. Grover. Mr. Byard further revised his determination of Mr. Dardick's occupational requirements, and again determined that it required sedentary physical exertion and occasional travel. Ms. Grover requested additional review of the medical evidence, which was performed by Dr. Chris Bartlett. Dr. Bartlett concluded that the medical evidence did not support a finding of disability. Unum therefore denied the second appeal.

## II. THE DISABILITY PLAN

The relevant portions of the disability plan (Plan) provided that UNUM would pay Mr. Dardick 60% of his earnings if he became disabled. Aplt. App. at 322. Under the Plan, disability was defined as follows:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

3

After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

*Id.* at 341. The relevant terms were defined as follows:

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified.

. . . .

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

. . . .

**SICKNESS** means an illness or disease. Disability must begin while you are covered under the plan.

*Id.* at 354-56. The Plan further provided that Unum was a claims fiduciary for the Plan, *id.* at 362, and "[b]enefits are administered by the insurer and provided in accordance with the insurance policy issued to the Plan," *id.* at 357. The parties agree that the Plan served as both insurer and Plan administrator.

## III.   STANDARDS OF REVIEW

Where, as here, a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the decision is subject to the arbitrary and capricious standard. *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006) (internal

4

quotation marks omitted). Under this standard, "this court upholds [the administrator's] determination so long as it was made on a reasoned basis and supported by substantial evidence." *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018). "The district court's determination of whether an ERISA benefits decision is arbitrary and capricious is a legal conclusion subject to de novo review." *Id.* at 996 (internal quotation marks omitted).

Unum's dual role as administrator and payer of benefits "creates a conflict of interest [such that] a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits," *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). "When there exists such a conflict of interest, we undertake a sliding scale analysis, where the degree of deference accorded the Plan Administrator is inversely related to the seriousness of the conflict." *DeGrado*, 451 F.3d at 1167-68 (internal quotation marks omitted). We "take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." *Id.* at 1168 (internal quotation marks omitted).

Mr. Dardick contends that Unum's conflict of interest was demonstrated by its treatment of the evidence in his case. He does not allege any circumstances, such as "a history of biased claims administration," that might indicate "a higher likelihood that [the conflict of interest] affected the benefits decision," *Metro. Life Ins. Co.*,

5

554 U.S. at 117. We apply these standards to our consideration of UNUM's denial of benefits.

## IV. ANALYSIS

### A. Medical Evidence

Mr. Dardick asserts Unum's treatment of the medical evidence demonstrated that the denial of benefits was arbitrary and capricious. First, he argues that Unum limited the duration of his short-term disability benefits based on the anticipated recovery time for his late-2015 percutaneous coronary intervention and bicep surgeries, even though his disability claim was not based on those procedures but on his chronic coronary artery disease. Thus, he asserts he was required to file two administrative appeals to convince Unum to consider his disabling cardiac condition.[1]

Unum recognized that the initial application for benefits was based on Dr. Trujillo's diagnosis of coronary artery disease. *See* Aplt. App. at 286 (initial denial decision). Unum acknowledged Mr. Dardick's surgeries and stated that benefits were approved based on the expected surgery-recovery duration. In addition, Unum reviewed the notes from Dr. Trujillo's recent examination, which showed an echocardiogram result of 50-55%, stable angina, and a physical exam

---

[1] Mr. Dardick makes a conclusory statement that Unum elevated the opinions of its own medical experts over those of his physicians. We decline to consider "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (internal quotation marks omitted). Mr. Dardick also points out that Unum argued in the district court that the frequency of his medical visits did not support a disability determination. But we are here concerned with the reasons Unum relied on to deny benefits, rather than on arguments made to the district court.

6

within normal limits. Accordingly, Unum concluded that the medical records did not demonstrate ongoing restrictions that would prevent Mr. Dardick from performing his regular sedentary occupation. Mr. Dardick's argument that Unum's initial benefits decision was based solely on surgery recovery times, rather than on his coronary artery disease, is not supported by the record.

Mr. Dardick also complains that Unum initially requested only his recent medical records. But since Unum ultimately received and considered all of the relevant records, we do not find that this circumstance renders Unum's decision arbitrary and capricious.

Next, Mr. Dardick claims that Unum ignored the stress of his job or erroneously considered that all job stress is the same. He relies on statements from Drs. Trujillo and Fanestil opining that stress can contribute to or precipitate coronary artery disease. *Id.* at 396, 850; *see also id.* at 888 (Dr. Fanestil's opinion that Mr. Dardick's "symptoms and diagnoses are undoubtedly related to chronic long term stress"). Although Dr. Fanestil's discussion of job stress made a general reference to failed attempts to treat this condition with medication, he did not describe any such attempts.

Dr. Bartlett acknowledged that Mr. Dardick's "job could indeed be stressful," but found that the "lack of any treatment" with appropriate medication was inconsistent with a disabling intolerance of stress. *Id.* at 914. In denying benefits, Unum determined that the following evidence refuted Mr. Dardick's claim of disabling stress: his physical activities, his normal physical and mental status exams,

7

the absence of any behavioral health treatment, his normalized echocardiogram, and his exercise test results. We conclude that substantial evidence supported Unum's determination.

Mr. Dardick further claims that Unum erroneously equated an ejection fraction of 55% with normal exercise tolerance. Although Dr. Trujillo stated that an ejection fraction of 55% does not correlate to normal exercise tolerance, *id.* at 850, Dr. Bartlett opined that the relevant test result showed improvement and was "now in the normal range," *id.* at 915. Unum's decision did not rely exclusively on the ejection-fraction result, but considered it with several other factors pertinent to Mr. Dardick's ability to perform the duties of his occupation, as noted above. Therefore, even if Unum erred in its view of this test result and erroneously relied on Dr. Bartlett's opinion, the benefits decision was still supported by substantial evidence.

Mr. Dardick also faults Unum for relying on "normal" examination results from Dr. Trujillo's notes to find that "Mr. Dardick is in general good health as opposed to simply relatively stable at the moment of examination." Aplt. Opening Br. at 29. We do not agree; Unum's reliance on the doctor's "normal" examination results did not make its disability decision arbitrary and capricious.

In addition, Mr. Dardick asserts that Unum unfairly relied on his ability to exercise as evidence that he could tolerate the stress of his job. He cites to his own statement that he expected to be able to increase his ability to exercise but not deal with stress, Aplt. App. at 131, and to Dr. Fanestil's statement that Mr. Dardick

8

should "focus on exercise and stress reduction (work is opposite of stress reduction) to help remain healthy and functioning," *id.* at 396. These statements do not explain how the types of stress differ and therefore do not establish that exercise and job stress were so different as to render Unum's treatment of Mr. Dardick's stress claim arbitrary and capricious.

Mr. Dardick also contends that Unum failed to take his anxiety and depression into account, despite references to those conditions by Drs. Fanestil and Trujillo. But as Dr. Bartlett observed, the record does not reflect that Mr. Dardick received treatment for depression and anxiety, other than a brief trial of bupropion for depression in April 2016. Mr. Dardick argues that Unum's reliance on a lack of treatment and on medical treatment notes indicating that he denied anxiety or depression constitutes "cherry picking" of evidence supporting a denial of benefits. Although Drs. Fanestil and Trujillo stated in August 2016 that Mr. Dardick's symptoms were related to anxiety and depression, those statements did not refute the earlier contemporaneous medical treatment notes stating that Mr. Dardick denied anxiety and depression, nor did they indicate that Mr. Dardick received treatment. Therefore, we reject the cherry-picking argument.

Mr. Dardick argues that Unum's reliance on his lack of medication to treat depression impermissibly failed to take into account his intolerance to medical therapies. Ms. Grover documented Mr. Dardick's intolerance of bupropion. Mr. Dardick does not claim he tried other medical therapies. Moreover, Dr. Bartlett discussed the claimed side-effects of Mr. Dardick's medications, concluding that "the

9

available medical notes do not support that the ongoing medications prescribed are causing side effects that rise to the level of impairment." *Id.* at 914.

Finally, Mr. Dardick challenges Unum's reliance on its medical reviewers, Ms. Grover and Dr. Bartlett. He argues that neither of them had the necessary training or experience in advanced cardiac disease or mental health conditions related to cardiac disease to offer an opinion. He relies on 29 C.F.R. § 2560.503-1(h)(3)(iii), which provides that where an adverse benefit decision "is based in whole or in part on a medical judgment," the consulting health care professional must have "appropriate training and experience in the field of medicine involved in the medical judgment." We agree with the district court that "Unum did not make a medical judgment as to whether [Mr. Dardick] suffered from coronary artery disease or other cardiac conditions identified by Dr. Trujillo but rather determined that [his] medical record failed to establish that [he] was incapable of performing his job despite these conditions." Aplt. App. at 1043. *Cf. Cooper v. Metro. Life Ins. Co.*, 862 F.3d 654, 662 (8th Cir. 2017) (collecting cases holding "the proper inquiry in analyzing a claim administrator's compliance with § 2560.503-1 is 'substantial compliance,' rather than 'technical compliance'"). Consequently, Unum's benefits decision was not arbitrary and capricious due to its reliance on the opinions of Dr. Bartlett and Ms. Grover.

Mr. Dardick asserts that it was improper for Unum to have Ms. Grover review his file a second time. He relies on 29 C.F.R. § 2560.503-1(h)(3)(v), which states that a health care professional consulted for the underlying denial of benefits shall not be the same individual consulted for the appeal from that denial. But it was not

10

Ms. Grover, but Kim Walker, R.N., who initially reviewed the medical records, and it was Ms. Walker's review on which Unum relied to deny benefits initially. Moreover, even if having Ms. Grover review the file twice was irregular, we agree with the district court that having Dr. Bartlett also review the medical evidence for the second appeal cured any irregularity.

## B. Characterization of Occupation

Mr. Dardick alleges that Unum mischaracterized the nature of his work as a vice president for Westcon, which was a procedural irregularity demonstrating arbitrariness. The Plan provided that an employee's occupation would be viewed "as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." Aplt. App. at 355-56.

Unum initially characterized Mr. Dardick's position as Systems Project Manager, a sedentary position. During the first appeal, Mr. Byard determined that Mr. Dardick's position was more consistent with a Cloud Solution Manager. Mr. Byard acknowledged Mr. Dardick's report that "his occupation includes travel all over the country and long work hours," *id.* at 409, which was considered "to be a job specific requirement . . . and not necessarily representative of the manner in which the overall occupation is performed throughout the national economy," *id.* at 411. As normally performed, this position contemplated "an occasional level of local business related travel [and] ongoing work hours in excess of a standard 40 hour work week." *Id.*

11

During the second appeal, Mr. Byard again revised his assessment of Mr. Dardick's position, finding his duties to be more consistent with the combined position of Vice President of Product Development and Vice President of Marketing. Addressing the travel requirements of this position, Mr. Byard again determined that as normally performed, the position required "an occasional level of local/regional business related travel." *Id.* at 899. And again, "work hours in excess of a standard 40 hour work week" were to be expected. *Id.*

Mr. Dardick maintains that Unum did not in good faith adjust its assessment of his occupation as it received additional information. Rather, he argues that Unum knew his job title from the beginning. But he cites to various documents that demonstrate an evolving picture of his occupation. *See* Reply Br. at 16. For example, his initial application submitted in August 2015 described his occupation only as "VP, Westcon Cloud Services." Aplt. App. at 48. Much later, on August 17, 2016, his former supervisor provided an extensive description of his work, *id.* at 862-65, which Mr. Byard relied on to revise his assessment of Mr. Dardick's occupational duties. Thus, we conclude that Unum's consideration of additional evidence to modify Mr. Dardick's job description did not demonstrate bad faith.

Although Mr. Dardick emphasizes that as he performed it, his position was very stressful and required extensive travel, he does not challenge either the Plan language providing that his occupation would be viewed as it is normally performed in the national economy or that the normal occupational requirements did not include excessive stress or extensive business travel. Mr. Dardick's citation to Unum's

12

claims manual directing that various job requirements, including travel, be considered when evaluating an employee's position does not nullify the overall Plan provision that an employee's position be viewed as it is normally performed in the national economy. For example, in evaluating the demands of the positions he identified for Mr. Dardick, Mr. Byard did consider the travel demands for those positions. Therefore, we conclude that Unum's assessment of Mr. Dardick's occupation was not arbitrary and capricious.

## V.    CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Allison H. Eid
Circuit Judge