**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL ERICK STACHMUS,

    Plaintiff - Appellant,

v.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

    Defendant - Appellee.

No. 20-7019
(D.C. No. 6:19-CV-00071-RAW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Michael Erick Stachmus sought a declaratory judgment that he and his son are

the rightful beneficiaries of a life insurance policy administered by The Guardian

Life Insurance Company of America under the Employee Retirement Income

Security Act (ERISA), 29 U.S.C. §§ 1001-1461.  The district court entered judgment

in favor of Guardian, and Stachmus now appeals.  He also seeks to seal portions of

the appendix containing personally identifying information, while Guardian seeks to

_____

    * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

recover its appellate fees and costs. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment, grant Stachmus's unopposed motion to seal portions of the appendix, and deny Guardian's request for fees and costs.

I

Guardian issued the policy to Stachmus's father (the insured) through his employer on July 1, 2011. The insured originally designated Stachmus and his son each 50% beneficiaries, but on May 9, 2012, the insured designated Stachmus a 90% beneficiary and Stachmus's step-sister, Andrea, a 10% beneficiary. Shortly after the insured died on September 4, 2013, Andrea submitted claims to Guardian on behalf of herself and Stachmus's step-mother and step-brother ("Andrea's claims"). She also sent Guardian a general power of attorney signed by the insured on July 27, 2011 (shortly after the policy was issued and before the May 9, 2012, beneficiary change) designating Andrea as the insured's attorney-in-fact, as well as a beneficiary-change form executed by Andrea on August 27, 2013 (just before the insured died on September 4). The August 27, 2013, beneficiary-change form designated Andrea a 50% beneficiary and Stachmus's step-mother and step-brother each 25% beneficiaries.

Because the power of attorney indicated its "powers [would] not exist after [the insured] bec[a]me disabled or incapacitated," Aplt. App., Vol. IV at 161, Guardian asked Andrea whether the insured was incapacitated at the time she signed the August 27, 2013, beneficiary-change form. She replied that the insured was not

2

incapacitated and that he had specifically directed her to change the designations. Consequently, Guardian paid Andrea's claims on October 17, 2013.

Eleven days later, on October 28, 2013, Stachmus wrote to Guardian to inquire how to begin the claims process, indicating he was aware of two policies, one from which he had been removed as a beneficiary by the August 27, 2013, beneficiary-change form and a second that designated him a 90% beneficiary. Guardian replied that the beneficiary-change form did not distinguish between Basic Life and Optional Life coverages and thus his previous 90% designation from May 9, 2012, was "null and void" as to both coverages, *id.* at 124.

More than two years later, on January 26, 2016, Stachmus, through counsel, submitted a formal claim to Guardian. He acknowledged Andrea's claims but asserted she was prohibited by state law from designating herself a beneficiary; he also argued that the August 27, 2013, beneficiary-change form was ineffective because the insured was incompetent at the time. Guardian denied Stachmus's claim on March 14, 2016, but directed him to provide additional information if he wished to appeal the decision.

On May 13, 2016, Stachmus sought review with Guardian's appeals committee. Guardian acknowledged the appeal on May 31, 2016, and invited him to provide additional information to support his claim. *Id.* at 64-65. Then on July 8, 2016, Guardian once again requested that Stachmus provide additional information to support his claim. Despite Guardian's repeated requests for additional information,

3

Stachmus provided no further support for his claims. Thus, Guardian denied his appeal on October 10, 2016.

Stachmus subsequently filed suit in state court. After Guardian removed the suit to federal court, Stachmus filed an amended complaint seeking declaratory relief that he and his son were the proper beneficiaries. He alleged that the August 27, 2013, beneficiary-change form was invalid because when Andrea signed it, the insured was receiving hospice care for cancer, he had suffered a massive stroke, and he was "completely incompetent," *id.*, Vol. I at 8. Stachmus initially moved for partial summary judgment to determine the district court's standard of review. He argued that Guardian's failure to resolve his administrative appeal within the prescribed regulatory timeline constituted a procedural irregularity that required de novo review of Guardian's adverse decision. He then moved for judgment on the administrative record.[1] Although he conceded for purposes of argument that the power of attorney was genuine, he questioned whether it was valid when Andrea executed the August 27, 2013, beneficiary-change form. *Id.*, Vol. VII at 60-61. He asserted that Andrea's self-dealing shifted the burden to Guardian to ensure that benefits were paid to the proper beneficiary, asserting Guardian had a fiduciary duty

---

[1] We construe the motion as a motion for summary judgment. "The Federal Rules of Civil Procedure contemplate no such mechanism as 'judgment on the administrative record.' Parties should avoid the practice of requesting it, and courts should avoid purporting to grant it. Doing so often creates unnecessary work for an appellate court in deciding whether to construe such a motion *ex post* as one for a bench trial . . . or as one for summary judgment." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1307 n.1 (10th Cir. 2007) (citations and internal quotation marks omitted).

to ensure there was no self-dealing or fraud. He argued that Guardian's single question posed to Andrea—whether the insured was competent on August 27, 2013—was insufficient to satisfy its burden to conduct an adequate investigation into potential fraud. He also argued that the August 27, 2013, beneficiary-change form was invalid because the insured's employer did not have notice of it as required under the policy.

The district court resolved the case in two separate orders. First, the court denied the motion for partial summary judgment, ruling it would review Guardian's denial of benefits under an arbitrary-and-capricious standard rather than de novo. Rejecting Stachmus's procedural-irregularity argument, the court observed that he waited more than two years to file a formal claim and Guardian sought additional time to obtain additional information from him.

Second, on the merits, the court entered judgment in favor of Guardian. The court ruled that Guardian qualified as a fiduciary, but Stachmus, as the claimant, bore the burden of showing he was entitled to benefits and yet he failed to support his claim. The court also rejected his argument that the August 27, 2013, beneficiary-change form was invalid because the insured's employer did not have notice of the beneficiary change. The court cited evidence indicating the employer knew about the beneficiary change, and it also noted that Stachmus admitted knowing about the beneficiary change in his October 28, 2013, letter to Guardian.

Now on appeal, Stachmus contends:

1. The district court reviewed Guardian's decision under the wrong standard;

5

2. The district court improperly considered arguments that Guardian failed to preserve during the administrative process, specifically:
   a. that the insured's employer knew about and approved the August 27, 2013, beneficiary change; and
   b. that Stachmus admitted in his October 28, 2013, letter that he knew he was removed as a beneficiary; and

3. The district court should have applied our precedent requiring administrators to investigate claims of wrongdoing before paying benefits.

We consider these arguments in turn.

II

*A. Standard for Reviewing Guardian's Decision*

"We review de novo the district court's determination of the proper standard to apply in its review of an ERISA plan administrator's decision." *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1315 (10th Cir. 2009) (italics and internal quotation marks omitted). An administrator's denial of benefits is reviewed de novo unless the "plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* (internal quotation marks omitted). "Where the plan gives the administrator discretionary authority, . . . we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (internal quotation marks omitted). Procedural irregularities such as the failure to render a timely decision within the temporal limits prescribed

6

by the plan or applicable regulations may warrant de novo review. *See Rasenack*, 585 F.3d at 1315-1316.

It is undisputed that under the plan, Guardian had "discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims." Aplt. App., Vol. VI at 142 (italics omitted). Consequently, the district court properly applied the deferential arbitrary-and-capricious standard unless a procedural irregularity suggests de novo review was required. On this score, Stachmus contends Guardian delayed processing his administrative appeal, warranting de novo review. We disagree.

Stachmus submitted his administrative appeal on May 13, 2016. Under 29 C.F.R. § 2560.503-1(i)(1)(i), Guardian had 60 days to render a decision, unless it determined a 60-day extension was necessary to process the claim, in which case it was obliged to notify him of the special circumstances requiring an extension and the date when it expected to render a decision. *See LaAsmar*, 605 F.3d at 797 (applying the regulatory timeline to the administrative appeal process). On May 31, 2016, Guardian acknowledged the appeal, notified Stachmus that it would render a decision within 60 days, and invited him to provide additional information to support his claim. Aplt. App., Vol. IV at 64-65.

On July 8, 2016, having received no documentation from Stachmus, Guardian timely notified him by letter that it "require[d] an extension to allow [him] the time to provide [it] with [supporting documentation] needed to provide [him] with a full and fair review." *Id.* at 61. Guardian urged him to provide evidence indicating that

7

the August 27, 2013, beneficiary-change form was not valid and that the insured was incompetent on that date. Guardian also alerted him that if the information was not received by September 5, 2016, it would issue a decision based on the information it already possessed. On August 26, 2016, Stachmus responded by letter, arguing that the power of attorney was void and that Guardian's payment of Andrea's claims was not supported by the record, but once again, he provided no supporting documentation. *See id.* at 55-57. Consequently, Guardian denied his appeal on October 10, 2016.

Stachmus contends Guardian's denial of his appeal was untimely because it was rendered more than 60 days after the July 8 notice of extension. However, under 29 C.F.R. § 2560.503-1(i)(4), if there is an extension "due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension [was] sent to the claimant until the date on which the claimant responds to the request for additional information." This provision tolled the 60-day period from July 8—when Guardian notified Stachmus it required additional information from him to process his claim—until August 26, when he responded with additional argument but no further information. Guardian's denial of his appeal on October 10 was therefore timely rendered within the 60-day extension. There was no procedural irregularity, and we therefore review Guardian's beneficiary determination under the deferential arbitrary-and-capricious standard.

## B. Beneficiary Determination

"We review summary judgment orders de novo, using the same standards applied by the district court." *LaAsmar*, 605 F.3d at 795. "Using the arbitrary and capricious standard, we ask whether the administrator's decision was reasonable and made in good faith." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1133 (10th Cir. 2011) (internal quotation marks omitted). We will uphold the decision "so long as it is predicated on a reasoned basis, and there is no requirement that the basis relied upon be the only logical one or even the superlative one." *Id.* at 1134 (internal quotation marks omitted). We examine the record for substantial evidence to support the administrator's decision. *See id.*

### 1. The District Court Did Not Consider Unpreserved Arguments

Stachmus does not directly contend that Guardian's decision is unsupported by substantial evidence. Instead, he contends the district court "exceeded its authority" by considering two unpreserved arguments that Guardian failed to advance during the administrative process: 1) that the insured's employer knew about and approved the August 27, 2013, beneficiary change, and 2) that Stachmus admitted in his October 28, 2013, letter that he knew he was removed as a beneficiary. Aplt. Br. at 16, 17, 19.

This contention is meritless. The district court did not consider unpreserved arguments; it rejected *Stachmus's* argument that the August 27, 2013, beneficiary change was invalid because the employer did not have notice of it as required by the policy. The court cited record evidence indicating the employer had signed the claim

9

form of Stachmus's step-mother, demonstrating the employer knew the beneficiaries had been changed. *See* Aplt. App., Vol. V at 159-60. The court also cited Stachmus's October 28, 2013, letter to Guardian in which he indicated he had been removed as a beneficiary, presumably to show that he, too, knew about the change and suggest that if he wished to contest its validity, he should have done so sooner. There was nothing improper about citing record evidence to reject Stachmus's arguments.

   2. *Stachmus Bore the Burden to Show He Was a Beneficiary*

   Stachmus also contends that Guardian, as a fiduciary, should have conducted a more rigorous investigation into Andrea's claims. He acknowledges that claimants generally bear the burden of establishing entitlement to benefits, *see Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 680 (10th Cir. 2019), but Stachmus attempts to shift the burden to Guardian by arguing under *Gaither v. Aetna Life Insurance Co.*, 394 F.3d 792 (10th Cir. 2004), that an administrator has a fiduciary duty to investigate "readily available information," Aplt. Br. at 22 (internal quotation marks omitted). He says Guardian breached that duty. We are not persuaded.

   In *Gaither*, we recognized that ERISA generally requires *claimants* to provide evidence to support their claims. *See* 394 F.3d at 804 ("[N]othing in ERISA requires plan administrators to go fishing for evidence favorable to a claim when it has not been brought to their attention that such evidence exists."). Yet we also recognized in that particular case there was specific plan language authorizing the administrator to obtain information necessary to resolve a claim—information the administrator did

10

not attempt to obtain. *See id.* at 804-06. Under those circumstances, we concluded "it was arbitrary and capricious for [the administrator] to dismiss [the] claim . . . without at least attempting to obtain information . . . ." *Id.* at 806.

Here, Stachmus refers us to no similar policy language authorizing Guardian to order and collect information in furtherance of its administrative role in processing claims. Instead, he merely urges us to adopt a broad reading of *Gaither* and impose upon administrators a blanket duty of investigation. But *Gaither* adopted only a "narrow principle that fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." *Id.* at 807. There was no evidence supporting Stachmus's theory of entitlement, and although he was once a beneficiary, the evidence—including Stachmus's own letter—indicated that the insured elected to change the beneficiary designations. Moreover, Guardian did not shut its eyes to any new information that might have been available; instead, it repeatedly requested more information from Stachmus to ascertain the validity of his claim, but he repeatedly offered nothing. On this record, we cannot say Guardian ignored readily available information.

### C. *Motion to Seal*

Apart from the merits of his appeal, Stachmus has filed an unopposed motion to seal the portion of the appendix containing the administrative record because it includes personally identifying information subject to the district court's protective

11

order.[2]  There is a presumption that the public has a common-law right of access to the records informing this court's decision, although a party may overcome that presumption by articulating a "real and substantial interest" in keeping the records under seal.  *Eugene S.*, 663 F.3d at 1135-36 (internal quotation marks omitted).  We have previously granted motions to seal portions of the appendix containing personal medical information or confidential business records.  *See id.*; *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 905 (10th Cir. 2017) ("[W]e have granted motions to seal medical records and internal confidential business records in other instances.").  Because Stachmus seeks to seal similar information contained in the administrative record, we grant the motion to seal volumes II through VI of the appendix.

### D.  Guardian's Request for Fees & Costs

Finally, Guardian included in its opening brief a request for appellate fees and costs.  We deny the request.

The relevant statutory provision, 29 U.S.C. § 1132(g)(1), states:  "In any action . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  This provision "grants district courts discretion to award attorney's fees to either party."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010) (emphasis and internal quotation marks omitted).  Some courts "have held that this section [also] allows the

---

[2] Although Stachmus filed the motion, it indicates that "[t]he arguments contained herein were provided to [Stachmus's] counsel by Guardian's counsel and are submitted by him on behalf of Guardian, the party asking that the appellate appendix in this case be filed under seal."  Mot. at. 2.

court to award attorney's fees on appeal." *Sokol v. Bernstein*, 812 F.2d 559, 560 (9th Cir. 1987); *see also, e.g.*, *Schwartz v. Gregori*, 160 F.3d 1116, 1119 n.5 (6th Cir. 1998) (noting § 1132(g)(1) "permits recovery of attorney's fees in connection with both trial court litigation and appellate litigation"). In considering an award, courts should evaluate 1) the degree of the opposing parties' culpability or bad faith; 2) the opposing parties' ability to satisfy a fee award; 3) whether a fee award would deter similar conduct; 4) whether the party requesting fees sought to benefit all plan participants and beneficiaries or resolve a significant legal question under ERISA; and 5) the relevant merits of the parties' positions. *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 1000 (10th Cir. 2018).

Guardian does not address these factors. Instead, it suggests an award here would promote the ERISA goals of enhancing administrative efficiency and deterring protracted litigation. But it does not go so far as to suggest that Stachmus brought this appeal in bad faith. Indeed, the circumstances surrounding the August 27, 2013, beneficiary change seem debatable enough that we cannot say Stachmus was unjustified in challenging it and pursuing his appeal. Further, there is no indication Stachmus could satisfy any fee award,[3] nor do we think a fee award would deter other potential ERISA claimants from pursuing similar claims. Also, there was no significant benefit sought or legal question resolved by this appeal, although the

---

[3] Stachmus is presently serving a sentence of life in prison without the possibility of parole. *See Stachmus v. Rudek*, 613 F. App'x 691, 692 (10th Cir. 2015).

13

merits do weigh in favor of Guardian.  Nonetheless, where the balance of these factors weigh in Stachmus's favor, we deny Guardian's request for fees and costs.

III

The judgment of the district court is affirmed.  Stachmus's motion to seal volumes II through VI of the appendix is granted, and Guardian's request for fees and costs is denied.

Entered for the Court


Allison H. Eid
Circuit Judge